SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6077
    Facsimile:  (213) 894-7631
    E-mail:   ruth.pinkel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

            Plaintiff,

            v.

RALPH TILLMAN,

            Defendant.

No. CR 17

18CR00012-GW

PLEA AGREEMENT FOR DEFENDANT
RALPH TILLMAN

    1.    This constitutes the plea agreement between Ralph Tillman

("defendant") and the United States Attorney's Office for the Central

District of California ("the USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

        a.    Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a two-count information in the form

attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with false statements to a government agent in violation of 18 U.S.C. § 1001 and subscribing to a false tax return in violation of 26 U.S.C. § 7206(1).

        b.   Not contest facts agreed to in this agreement.

        c.   Abide by all agreements regarding sentencing contained in this agreement.

        d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

        g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

    3.   Defendant admits that defendant received $244,000 of unreported income for 2003-2015, which consists of the following amounts for the following years:  $7,000 for 2003, $9,000 for 2004, $12,000 for 2005, $13,500 for 2006, $15,000 for 2007, $16,000 for 2008, $21,500 for 2009, $22,500 for 2010, $23,500 for 2011, $24,500 for 2012, $25,500 for 2013, $26,500 for 2014, and $27,500 for 2015. Defendant agrees that:

a.   Defendant will file, prior to the time of sentencing, amended returns for the years subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay at or before sentencing, if financially able, all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational errors.

b.   Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c.   Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.   Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2003-2015.

e.   Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f.   Defendant will sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this

plea agreement, permitting the Internal Revenue Service to assess and collect the total sum of $62,005 (consisting of the following amounts for the following tax years: $1,750 (2003); $2,700 (2004); $3,041 (2005); $3,418 (2006); $3,793 (2007); $2,826 (2008); $5,835 (2009); $6,075 (2010); $5,875 (2011); $6,125 (2012); $6,474 (2013); $6,625 (2014); $7,468 (2015) for the defendant's tax years 2003-2015), which comprises the tax liabilities, as well as assess and collect the civil fraud penalty for each year and statutory interest, on the tax liabilities, as provided by law.

4.   Defendant further agrees to cooperate fully with the USAO, Veterans Affairs-Office of the Inspector General, the Federal Bureau of Investigation, the Internal Revenue Service, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.   This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

a.   If requested to do so by the USAO, act in an undercover capacity to the best of defendant's ability in connection with criminal investigations by federal, state, local, or foreign law enforcement authorities, in accordance with the express instructions

1   of those law enforcement authorities.  Defendant agrees not to act in

2   an undercover capacity, tape record any conversations, or gather any

3   evidence except after a request by the USAO and in accordance with

4   express instructions of federal, state, local, or foreign law

5   enforcement authorities.

6       5.   For purposes of this agreement: (1) "Cooperation

7   Information" shall mean any statements made, or documents, records,

8   tangible evidence, or other information provided, by defendant

9   pursuant to defendant's cooperation under this agreement or pursuant

10  to the letter agreement previously entered into by the parties dated

11  May 16, 2017 (the "Letter Agreement"); and (2) "Plea Information"

12  shall mean any statements made by defendant, under oath, at the

13  guilty plea hearing and the agreed to factual basis statement in this

14  agreement.

THE USAO'S OBLIGATIONS

16      6.   The USAO agrees to:

17          a.   Not contest facts agreed to in this agreement.

18          b.   Abide by all agreements regarding sentencing contained

19  in this agreement.

20          c.   At the time of sentencing, provided that defendant

21  demonstrates an acceptance of responsibility for the offense up to

22  and including the time of sentencing, recommend a two-level reduction

23  in the applicable Sentencing Guidelines offense level, pursuant to

24  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

25  additional one-level reduction if available under that section.

26      7.   The USAO further agrees:

27          a.   Not to offer as evidence in its case-in-chief in the

28  above-captioned case or any other criminal prosecution that may be

5

1  brought against defendant by the USAO, or in connection with any
2  sentencing proceeding in any criminal case that may be brought
3  against defendant by the USAO, any Cooperation Information.
4  Defendant agrees, however, that the USAO may use both Cooperation
5  Information and Plea Information: (1) to obtain and pursue leads to
6  other evidence, which evidence may be used for any purpose, including
7  any criminal prosecution of defendant; (2) to cross-examine defendant
8  should defendant testify, or to rebut any evidence offered, or
9  argument or representation made, by defendant, defendant's counsel,
10 or a witness called by defendant in any trial, sentencing hearing, or
11 other court proceeding; and (3) in any criminal prosecution of
12 defendant for false statement, obstruction of justice, or perjury.

13        b.   Not to use Cooperation Information against defendant
14 at sentencing for the purpose of determining the applicable guideline
15 range, including the appropriateness of an upward departure, or the
16 sentence to be imposed, and to recommend to the Court that
17 Cooperation Information not be used in determining the applicable
18 guideline range or the sentence to be imposed.  Defendant
19 understands, however, that Cooperation Information will be disclosed
20 to the probation office and the Court, and that the Court may use
21 Cooperation Information for the purposes set forth in U.S.S.G
22 § 1B1.8(b) and for determining the sentence to be imposed.

23        c.   In connection with defendant's sentencing, to bring to
24 the Court's attention the nature and extent of defendant's
25 cooperation.

26        d.   If the USAO determines, in its exclusive judgment,
27 that defendant has both complied with defendant's obligations under
28 paragraphs 2 and 3 above and provided substantial assistance to law

6

enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

8.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.   The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.   The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether

7

the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

## NATURE OF THE OFFENSE

9. Defendant understands that for defendant to be guilty of the crime charged in Count One of the Information, that is, false statement to a government agency in violation of Title 18, United States Code, Section 1001, the following must be true: (a) first, defendant made a false statement in a matter within the jurisdiction of the Department of Veterans Affairs, Office of Inspector General ("VA-OIG"); (b) second, defendant acted willfully; that is, defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and (c) third, the statement was material to the activities or decisions of VA-OIG; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

10. Defendant understands that for defendant to be guilty of the crime charged in Count Two of the Information, that is, subscribing to a false tax return in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) defendant signed and filed a tax return for the year 2014 that he knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in filing the false tax return, defendant acted willfully. A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service. A defendant acts willfully when defendant knows that federal tax law imposed a

1   duty on defendant and defendant intentionally and voluntarily
2   violated that duty.

3                    PENALTIES AND RESTITUTION

4       11.  Defendant understands that the statutory maximum sentence
5   that the Court can impose for a violation of Title 18, United States
6   Code, Section 1001, is: five years' imprisonment; a three-year period
7   of supervised release; a fine of $250,000 or twice the gross gain or
8   gross loss resulting from the offense, whichever is greatest; and a
9   mandatory special assessment of $100.

10      12.  Defendant understands that the statutory maximum sentence
11  that the Court can impose for a violation of Title 26, United States
12  Code, Section 7206(1), is: three years' imprisonment; a one-year
13  period of supervised release; a fine of $250,000 or twice the gross
14  gain or gross loss resulting from the offense, whichever is greatest;
15  and a mandatory special assessment of $100.

16      13.  Defendant understands, therefore, that the total maximum
17  sentence for all offenses to which defendant is pleading guilty is:
18  eight years' imprisonment; a three-year period of supervised release;
19  a fine of $500,000 or twice the gross gain or gross loss resulting
20  from the offenses, whichever is greatest; and a mandatory special
21  assessment of $200.

22      14.  Defendant understands and agrees that the Court: (a) may
23  order defendant to pay restitution in the form of any additional
24  taxes, interest, and penalties that defendant owes to the United
25  States based upon the count of conviction and any relevant conduct,
26  and; and (b) must order defendant to pay the costs of prosecution,
27  which may be in addition to the statutory maximum fine stated above.

28

15.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

16.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.   Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

17.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.   The court cannot, and defendant's attorney also may not be able to, advise defendant

1  fully regarding the immigration consequences of the felony conviction
2  in this case.  Defendant understands that unexpected immigration
3  consequences will not serve as grounds to withdraw defendant's guilty
4  plea.

5  FACTUAL BASIS

6      18.  Defendant admits that defendant is, in fact, guilty of the
7  offenses to which defendant is agreeing to plead guilty.  Defendant
8  and the USAO agree to the statement of facts provided below and agree
9  that this statement of facts is sufficient to support a plea of
10 guilty to the charges described in this agreement and to establish
11 the Sentencing Guidelines factors set forth in paragraph 20 below but
12 is not meant to be a complete recitation of all facts relevant to the
13 underlying criminal conduct or all facts known to either party that
14 relate to that conduct.

15 **Background on WSS Contract, Defendant's Job as a VA Contracting**
16 **Official, and the Bribery Scheme**

17     The United States Department of Veterans Affairs ("VA") was
18 authorized by law to enter into "sharing" agreement contracts with
19 other entities for the use of VA space.  Further, the law authorized
20 VA to retain the proceeds of the transactions and the VA required
21 that contracts "must be in the best interest of veterans" and "must
22 be in the best interest of the government."

23     From approximately January 2000 to September 2014, defendant
24 held various positions at VA, Greater Los Angeles Healthcare System
25 ("GLAHS"), including Chief of Asset Management and Chief of
26 Communications and External Affairs.  In these positions, defendant
27 served as a contracting officer and had the fiduciary responsibility
28 for managing the process in which the VA entered into contracts with

11

1    "Sharing Partners" on the VA's West Los Angeles campus.   The Sharing
2    Partners provided goods, rent and/or services to the VA and, in the
3    case of Westside Services, LLC ("WSS"), described below, collected
4    revenue for activities and events on VA property and were required to
5    share revenue with the VA.   Defendant's responsibilities included
6    conducting negotiations with prospective Sharing Partners for land
7    use agreements and determining whether VA should enter into certain
8    agreements.

9        Defendant was an employee acting for, or and on behalf, of a
10   department of the United States government, namely, the VA.

11       WSS was a California Limited Liability Company ("LLC").   Co-
12   conspirator Richard Scott ("Scott") was the primary owner and had
13   primary responsibility for the day-to-day operations of WSS.

14       In 1999, WSS was awarded a share agreement contract ("the
15   Contract") with the VA to operate parking lots at the VA GLAHS,
16   primarily at the West Los Angeles campus.   On July 15, 2002, VA and
17   WSS entered into a superseding contract, under the same contract
18   number (V691S-154).   The VA was entitled to receive 60% of the gross
19   revenue of WSS's services provided under the modified Contract.   WSS
20   was authorized to receive the remaining 40% of the gross revenue but
21   was required to deduct all expenses from its share of the gross
22   revenue.   Over time, the revenue was derived from a variety of
23   sources, all operating on VA property.   The revenue included:
24   parking at the Barrington Place Lot, UCLA baseball games, Wadsworth
25   and Brentwood Theaters, Nissan Open Golf Tournament, L.A. Marathon,
26   and payments from businesses who rented VA lots to park buses,
27   vehicles, and to store equipment and supplies.

28

As part of defendant's official duties in managing share agreement contracts for the VA, defendant was responsible for reviewing "annual reconciliation reports" (aka "Settlement Statements"), which were an annual accounting of revenue and amounts due to the VA, and were required by the share agreement contracts with the VA.   Pursuant to the Contract, WSS was required to submit annual Settlement Statements to VA and defendant was responsible for reviewing the WSS's Settlement Statements for accuracy and approval. As the contracting officer, defendant was also responsible for determining what in-kind services/improvements WSS could perform for the VA, in lieu of monetary revenue paid to VA.

**Bribery Scheme**

In approximately November 2003 defendant solicited a payment from Richard Scott.   The initial payment was for defendant to pay for a family matter.   On or about November 10, 2003, Scott went to defendant's office and gave defendant a FedEx envelope containing approximately $6,000 in 100 bills.

After the $6,000 payment, between November 2003 and May 2004, Scott gave defendant a few hundred dollars approximately three to four times.

Approximately one to two years after Scott gave defendant the initial $6,000 payment, Scott began a regular pattern of paying defendant cash approximately once a month.   The cash was hand delivered, by Scott, to defendant primarily at defendant's office. The cash, which ranged from $500 to $1,000 each time, and on a few occasions, reached as high as $4,000, was delivered in a sealed FedEx envelope containing 100-dollar bill denominations.   In instances where the cash payments reached $1,000, ten 100-dollar bills were

1  stapled together.   Scott would generally place the envelope on

2  defendant's desk without further discussion.   Sometimes defendant

3  would thank Scott for the money, and tell Scott that the money was

4  really helping him out.

5      On many occasions, Scott increased the amount of bribe payments

6  to defendant, approximately twice a year, when defendant's property

7  tax payments were due.

8      On a few occasions, defendant and Scott met at a restaurant in

9  the Brentwood area of Los Angeles where Scott gave defendant the

10  FedEx envelope containing the monthly cash bribes.

11      Scott's payments to defendant continued, uninterrupted, in this

12  manner until defendant retired from the VA in September 2014.

13      In return for the cash bribe payments and other things of value,

14  defendant would, among other things: (a) intentionally fail to

15  scrutinize the annual Settlement Statements, despite that defendant

16  knew the Settlement Statements contained false information;  (b) fail

17  to inform his superiors at the VA that Scott was not reporting

18  accurate and truthful revenue and expenses to the VA; and (c) would

19  enter into a modification of and an extension (on May 25, 2011) of

20  the Contract with WSS, and other agreements, in order to continue the

21  fraud and bribery scheme.

22      Scott told defendant that he got a lot more income than he

23  reported to the VA and liked cash customers.   Defendant also knew

24  that Scott was falsely inflating expenses/in-kind services reported

25  to the VA.   Defendant was aware that Scott was defrauding the VA out

26  of millions of dollars, but was not aware of the full extent of the

27  fraud.

28  //

### False Statements to Federal Agents

On September 16, 2014, VA-Office of Inspector General ("OIG") agents interviewed defendant at his office in Los Angeles. Defendant knowingly and willfully made materially false, fictitious, and fraudulent statements and representation to the agents, which included the following: defendant denied that he received money, favors, gifts, or anything of value from Scott; claimed that unexplained cash deposits in his bank accounts were from a variety of things; stated that he did not take anything from WSS and that he was truthful to the interviewing agents. In truth, defendant did receive money and other things of value from Scott, and defendant did deposit cash bribe payments from Scott into his bank account.

Defendant made false statements to the federal agents on September 16, 2014 to conceal his illegal bribery scheme with Scott. Defendant's false statements were material in that they had a tendency to influence the investigation of VA-OIG and affected VA-OIG's ability to properly investigate the illegal activity of both defendant and Richard Scott.

Following defendant's retirement from the VA, he continued to meet with Scott and continued to accept cash payments from Scott as "hush money" and to conceal the bribery scheme. Defendant even offered Scott advice about how to negotiate with the VA over contract terminations. During this time period, Scott told defendant, in reference to the long running bribery scheme, "if I go down, you go down."

### Unreported Income and Tax Due and Owing

For calendar years 2003 to 2015, defendant failed to report a total of $244,00 of income he received from the bribery payments

described above, which consists of the following amounts for the following years: $7,000 for 2003, $9,000 for 2004, $12,000 for 2005, $13,500 for 2006, $15,000 for 2007, $16,000 for 2008, $21,500 for 2009, $22,500 for 2010, $23,500 for 2011, $24,500 for 2012, $25,500 for 2013, $26,500 for 2014, and $27,500 for 2015. Defendant's under reporting of income resulted in lowering the taxes reported as due and owing on his 1040 tax returns. As a result of defendant's conduct, defendant owes additional taxes totaling $62,005 consisting of the following amounts for the following tax years: $1,750 (2003); $2,700 (2004); $3,041 (2005); $3,418 (2006); $3,793 (2007); $2,826 (2008); $5,835 (2009); $6,075 (2010); $5,875 (2011); $6,125 (2012); $6,474 (2013); $6,625 (2014); $7,468 (2015).

On or about October 7, 2015, in Los Angeles County, within the Central District of California, defendant willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2014, which defendant verified by a written declaration that it was made under penalty of perjury, and filed such tax return with the Internal Revenue Service, which defendant did not believe to be true and correct as to every material matter in that it failed to report the additional income for 2014 described above.

The false information provided by defendant was material in that it affected the IRS's calculation of the amount of income earned and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on defendant's return. Defendant acted willfully. Defendant knew that the law required him to report all income accurately and to pay all income tax that was due and owing. Defendant voluntarily and intentionally violated that duty.

16

**Additional Illegal Income and Estimated Total Bribe Receipts**

In addition to the unreported income received from bribery payments, described above, defendant received from Scott illegal income of $28,500 in 2016 and $13,750 in 2017, which made the total estimated bribes from Scott approximately $286,250 for 2003-2017.

SENTENCING FACTORS

19.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).   Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

20.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Count One (False Statements)

| | | |
|---|---|---|
| Base Offense Level: | 14 | [U.S.S.G. § 2J1.2(a)] |
| Specific Offense Characteristics: [Substantial interference with the administration of justice] | +3 | [U.S.S.G. §2J1.2(b)(2)] |
| Adjustment: Obstructing or impeding the administration of justice | +2 | [U.S.S.G. § 3C1.1] |

17

Count Two (Subscribing to False Tax Return)

| | | |
|---|---|---|
| Base Offense Level:<br>[$62,000 Tax Loss] | 14 | [U.S.S.G. § 2T1.1(a)(1)<br>and § 2T4.1(E)] |
| Specific Offense<br>Characteristics:   [Failure to<br>Report Income Over $10,000<br>from Criminal Activity] | +2 | [U.S.S.G. §2T1.1(b)(1)] |
| **Multi Count Adjustment:** | +2 | [U.S.S.G. § 3D1.1 and<br>3D1.3] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

21.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

22.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

23.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel — and if necessary have the court appoint counsel — at trial.   Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the court appoint counsel — at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

24.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 46 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order,

1   provided it requires payment of no more than $62,500; (e) the term of

2   probation or supervised release imposed by the Court, provided it is

3   within the statutory maximum; and (f) any of the following conditions

4   of probation or supervised release imposed by the Court: the

5   conditions set forth in General Orders 318, 01-05, and/or 05-02 of

6   this Court; the drug testing conditions mandated by 18 U.S.C.

7   §§ 3563(a)(5) and 3583(d).

8       26.   The USAO agrees that, provided (a) all portions of the

9   sentence are at or below the statutory maximum specified above and

10  (b) the Court imposes a term of imprisonment of no less than 37

11  months, the USAO gives up its right to appeal any portion of the

12  sentence, with the exception that the USAO reserves the right to

13  appeal the following: (a) the amount of restitution ordered if that

14  amount is less than $62,500.

15              <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

16      27.   Defendant agrees that if, after entering a guilty plea

17  pursuant to this agreement, defendant seeks to withdraw and succeeds

18  in withdrawing defendant's guilty plea on any basis other than a

19  claim and finding that entry into this plea agreement was

20  involuntary, then (a) the USAO will be relieved of all of its

21  obligations under this agreement, including in particular its

22  obligations regarding the use of Cooperation Information; (b) in any

23  investigation, criminal prosecution, or civil, administrative, or

24  regulatory action, defendant agrees that any Cooperation Information

25  and any evidence derived from any Cooperation Information shall be

26  admissible against defendant, and defendant will not assert, and

27  hereby waives and gives up, any claim under the United States

28  Constitution, any statute, or any federal rule, that any Cooperation

20

1  Information or any evidence derived from any Cooperation Information
2  should be suppressed or is inadmissible; and (c) should the USAO
3  choose to pursue any charge that was either dismissed or not filed as
4  a result of this agreement, then (i) any applicable statute of
5  limitations will be tolled between the date of defendant's signing of
6  this agreement and the filing commencing any such action; and
7  (ii) defendant waives and gives up all defenses based on the statute
8  of limitations, any claim of pre-indictment delay, or any speedy
9  trial claim with respect to any such action, except to the extent
10 that such defenses existed as of the date of defendant's signing this
11 agreement.

12                    EFFECTIVE DATE OF AGREEMENT

13     28.  This agreement is effective upon signature and execution of
14 all required certifications by defendant, defendant's counsel, and an
15 Assistant United States Attorney.

16                       BREACH OF AGREEMENT

17     29.  Defendant agrees that if defendant, at any time after the
18 signature of this agreement and execution of all required
19 certifications by defendant, defendant's counsel, and an Assistant
20 United States Attorney, knowingly violates or fails to perform any of
21 defendant's obligations under this agreement ("a breach"), the USAO
22 may declare this agreement breached.  For example, if defendant
23 knowingly, in an interview, before a grand jury, or at trial, falsely
24 accuses another person of criminal conduct or falsely minimizes
25 defendant's own role, or the role of another, in criminal conduct,
26 defendant will have breached this agreement.  All of defendant's
27 obligations are material, a single breach of this agreement is
28 sufficient for the USAO to declare a breach, and defendant shall not

1   be deemed to have cured a breach without the express agreement of the
2   USAO in writing.   If the USAO declares this agreement breached, and
3   the Court finds such a breach to have occurred, then:

4         a.   If defendant has previously entered a guilty plea
5   pursuant to this agreement, defendant will not be able to withdraw
6   the guilty plea.

7         b.   The USAO will be relieved of all its obligations under
8   this agreement; in particular, the USAO: (i) will no longer be bound
9   by any agreements concerning sentencing and will be free to seek any
10  sentence up to the statutory maximum for the crime to which defendant
11  has pleaded guilty; and (ii) will no longer be bound by any agreement
12  regarding the use of Cooperation Information and will be free to use
13  any Cooperation Information in any way in any investigation, criminal
14  prosecution, or civil, administrative, or regulatory action.

15        c.   The USAO will be free to criminally prosecute
16  defendant for false statement, obstruction of justice, and perjury
17  based on any knowingly false or misleading statement by defendant.

18        d.   In any investigation, criminal prosecution, or civil,
19  administrative, or regulatory action: (i) defendant will not assert,
20  and hereby waives and gives up, any claim that any Cooperation
21  Information was obtained in violation of the Fifth Amendment
22  privilege against compelled self-incrimination; and (ii) defendant
23  agrees that any Cooperation Information and any Plea Information, as
24  well as any evidence derived from any Cooperation Information or any
25  Plea Information, shall be admissible against defendant, and
26  defendant will not assert, and hereby waives and gives up, any claim
27  under the United States Constitution, any statute, Rule 410 of the
28  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

1  Criminal Procedure, or any other federal rule, that any Cooperation

2  Information, any Plea Information, or any evidence derived from any

3  Cooperation Information or any Plea Information should be suppressed

4  or is inadmissible.

5                    COURT AND PROBATION OFFICE NOT PARTIES

6        30.  Defendant understands that the Court and the United States

7  Probation Office are not parties to this agreement and need not

8  accept any of the USAO's sentencing recommendations or the parties'

9  agreements to facts or sentencing factors.

10       31.  Defendant understands that both defendant and the USAO are

11  free to: (a) supplement the facts by supplying relevant information

12  to the United States Probation Office and the Court, (b) correct any

13  and all factual misstatements relating to the Court's Sentencing

14  Guidelines calculations and determination of sentence, and (c) argue

15  on appeal and collateral review that the Court's Sentencing

16  Guidelines calculations and the sentence it chooses to impose are not

17  error, although each party agrees to maintain its view that the

18  calculations in paragraph 20 are consistent with the facts of this

19  case.  While this paragraph permits both the USAO and defendant to

20  submit full and complete factual information to the United States

21  Probation Office and the Court, even if that factual information may

22  be viewed as inconsistent with the facts agreed to in this agreement,

23  this paragraph does not affect defendant's and the USAO's obligations

24  not to contest the facts agreed to in this agreement.

25       32.  Defendant understands that even if the Court ignores any

26  sentencing recommendation, finds facts or reaches conclusions

27  different from those agreed to, and/or imposes any sentence up to the

28  maximum established by statute, defendant cannot, for that reason,

1  withdraw defendant's guilty plea, and defendant will remain bound to
2  fulfill all defendant's obligations under this agreement.   Defendant
3  understands that no one -- not the prosecutor, defendant's attorney,
4  or the Court -- can make a binding prediction or promise regarding
5  the sentence defendant will receive, except that it will be within
6  the statutory maximum.

7                        NO ADDITIONAL AGREEMENTS

8       33.   Defendant understands that, except as set forth herein,
9  there are no promises, understandings, or agreements between the USAO
10 and defendant or defendant's attorney, and that no additional
11 promise, understanding, or agreement may be entered into unless in a
12 writing signed by all parties or on the record in court.
13 //
14 //
15 //
16 //
17 //
18 //
19
20
21
22
23
24
25
26
27
28

24

1         <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2      34. The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 SANDRA R. BROWN
Acting United States Attorney

9

10                                     January 9, 2018

RUTH C. PINKEL                Date

11 Assistant United States Attorney

12                                12/18/17

RALPH TILLMAN                Date

13 Defendant

14                                12/18/17

DAVID ELDEN                  Date

15 Attorney for Defendant Ralph

Tillman

16

17             <u>CERTIFICATION OF DEFENDANT</u>

18      I have read this agreement in its entirety. I have had enough

19 time to review and consider this agreement, and I have carefully and

20 thoroughly discussed every part of it with my attorney. I understand

21 the terms of this agreement, and I voluntarily agree to those terms.

22 I have discussed the evidence with my attorney, and my attorney has

23 advised me of my rights, of possible pretrial motions that might be

24 filed, of possible defenses that might be asserted either prior to or

25 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

26 of relevant Sentencing Guidelines provisions, and of the consequences

27 of entering into this agreement. No promises, inducements, or

28 representations of any kind have been made to me other than those

1   contained in this agreement.  No one has threatened or forced me in

2   any way to enter into this agreement.  I am satisfied with the

3   representation of my attorney in this matter, and I am pleading

4   guilty because I am guilty of the charges and wish to take advantage

5   of the promises set forth in this agreement, and not for any other

6   reason.

7   _____          12/18/17

8   RALPH TILLMAN                            Date
    Defendant

9

10                CERTIFICATION OF DEFENDANT'S ATTORNEY

11       I am RAPLH TILLMAN'S attorney.  I have carefully and thoroughly

12   discussed every part of this agreement with my client.  Further, I

13   have fully advised my client of his rights, of possible pretrial

14   motions that might be filed, of possible defenses that might be

15   asserted either prior to or at trial, of the sentencing factors set

16   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17   provisions, and of the consequences of entering into this agreement.

18   To my knowledge: no promises, inducements, or representations of any

19   kind have been made to my client other than those contained in this

20   agreement; no one has threatened or forced my client in any way to

21   enter into this agreement; my client's decision to enter into this

22   agreement is an informed and voluntary one; and the factual basis set

23   forth in this agreement is sufficient to support my client's entry of

24   a guilty plea pursuant to this agreement.

25   _____          12/19/17

26   DAVID ELDEN                              Date
    Attorney for Defendant Ralph

27   Tillman

28

                              26

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>RALPH TILLMAN,<br><br>       Defendant. | CR No. 17-<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1001: False<br>Statements; 26 U.S.C. § 7206(1):<br>Subscribing to False Tax Return] |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1001]

On or about September 16, 2014, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, Department of Veteran's Affairs, Office of Inspector General ("VA-OIG"), defendant RALPH TILLMAN knowingly and willfully made a materially false, fraudulent, fictitious, and fraudulent statement and representation to two Special Agents of VA-OIG, in that defendant TILLMAN represented that he had not received money, favors, gifts, or anything of value from co-conspirator Richard Scott.  When in truth and fact, as defendant TILLMAN then

1   well knew, defendant had been accepting bribe payments from co-

2   conspirator Richard Scott for eleven years.

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about October 7, 2015, in Los Angeles County, within the Central District of California, defendant RALPH A. TILLMAN ("TILLMAN") willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2014, which defendant TILLMAN verified by a written declaration that it was made under penalty of perjury, and filed such tax return with the Internal Revenue Service, which defendant TILLMAN did not believe to be true and correct as to every material matter, in that the tax return reported total (joint) income of $155,914, when, in fact, as defendant TILLMAN then knew, he failed to report additional income of $26,500 for calendar year 2014.

SANDRA R. BROWN
Acting United States Attorney


LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
Assistant United States Attorney
Chief, Public Corruption and Civil
  Rights Section

RUTH C. PINKEL
Assistant United States Attorney
Public Corruption and Civil Rights
Section

3

### PROOF OF SERVICE

I, Sandy Ear, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on January 12, 2018, I deposited in the United States mail at the United States Courthouse in the above-titled action, in an envelope bearing the requisite postage, a copy of: **Plea Agreement for Defendant Ralph Tillman**

service was:

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ By messenger, as follows:

☐ By Federal Express, as follows:

David A. Elden, Esq.
Law Office of David A. Elden
11377 W. Olympic Blvd., 10th Floor
Los Angeles, CA 90064-1625

at his last known address, at which place there is a delivery service by United States mail.

1    This Certificate is executed on January 12, 2018, at Los
2    Angeles, California.   I certify under penalty of perjury that the
3    foregoing is true and correct.


SANDY EAR
Legal Assistant